United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Lovely Marius, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 23-22064-Civ-Scola |
| | ) |
| Iberia Bank and others, Defendants. | ) |

**Order Granting Motion for Partial Dismissal**

Lovely Marius, initially proceeding pro se, filed this lawsuit against Defendant First Horizon Bank (the "Bank"), claiming she was racially discriminated against.[1] Specifically, Marius appears to allege she was prevented from opening an account at a Bank branch in Aventura, Florida, and that Lupe Rodriguez[2] (a bank employee), urged her to instead "open her bank account with banks for '[B]lack people.'" (2d Am. Compl., ECF No. 38 ¶ 12, 2.) The Court previously granted First Horizon Bank's motion to dismiss, in part, and at the same time struck Marius's complaint as a shotgun pleading. (Order, ECF No. 32.) Marius has since filed a second amended complaint, now represented by counsel, lodging three counts: one Civil Rights Act claim under 42 U.S.C. § 1981 (count one); and two state-law claims—one for racial discrimination under Florida Statutes section 760.08 (count two); and one common-law claim, for intentional infliction of emotional distress (count three). (2d Am. Compl. ¶¶ 28–39.) The Bank now seeks to dismiss counts two and three. (Def.'s Mot., ECF No. 39.) Marius has not responded and the time to do so has passed. After review, the Court **grants** the Bank's motion (**ECF No. 39**.)

1. **Background**[3]

At some point after April 2021, Marius walked into a Bank branch, in Aventura, Florida, intending to open a business bank account. (2d Am. Compl.

---

[1] Despite First Horizon Bank's repeatedly advising Marius that it, and not First Horizon Corporation (First Horizon Bank's parent company) or Iberia Bank (which merged into First Horizon Bank), is the proper defendant, Marius persists in referencing both entity names as Defendants. Accordingly, the Court will deem any reference to First Horizon Corporation (or First Horizon National Corp., as named by Marius) or Iberia Bank to mean First Horizon Bank.

[2] Marius also names Rodriguez as a defendant, but the Court recently dismissed Rodriguez, without prejudice, based on Marius's failure to timely serve her. (Order, ECF No. 41.)

[3] This background is based on the allegations in the second amended complaint. For purposes of evaluating the Bank's motion to dismiss for a failure to state a claim, the Court accepts the complaint's factual allegations as true and construes the allegations in the light most favorable to Marius per Federal Rule of Civil Procedure 12(b)(6).

¶¶ 7–8.) The business account she sought was related to a non-profit Marius had started, called Purple Vine Refuge Inc., the purpose of which was to provide support to homeless people. (*Id.* ¶¶ 7–8.) Rodriguez, a bank employee, approached Marius, offering to help her with opening the account. (*Id.* ¶ 9.) Marius says she provided Rodriguez with "all confidential and sensitive financial documents and personal information" for both herself and Purple Vine, to open the account. (*Id.* ¶ 10.) But as Rodriguez began processing the information, she told Marius, "in a loud voice," that Aventura would never allow a homeless shelter to be established in the city. (*Id.* ¶ 11) Marius says Rodriguez then "made racially intimidating gestures and comments," advising Marius to go "open her bank account with banks for '[B]lack people.'" (*Id.* ¶ 12.) Feeling "violated and intimidated," as she describes it, Marius asked to speak to the "Branch Manager." (*Id.* ¶ 13–14.) After Rodriguez told her the Branch Manager was unavailable, Marius left but came back later that day. (*Id.* ¶¶ 15–17.) Upon her return, Marius again asked to speak with the Branch Manager and also asked Rodriguez to return all the sensitive documentation Marius had provided earlier. (*Id.* ¶¶ 17–19.) Rodriguez ripped off a portion of the documents, handed Marius the ripped pages, but walked away and refused to hand over the other documents. (*Id.* ¶ 20.) Thereafter, the Branch Supervisor—Marius identifies her as Kathy—intervened and asked Rodriguez to return the rest of Marius's documents to her. (*Id.* ¶ 21.)

A few days later, on June 8, 2021, Marius filed a complaint about the incident with the Consumer Financial Protection Bureau. (*Id.* ¶ 23.) It appears the Bureau responded to that complaint, ten days later, on June 18, but took no action against the Bank. (*Id.* ¶ 24.)

Sometime later, Marius was able to open an account with TD Bank without any issue. (*Id.* ¶ 26.) She says she was damaged by the Bank's discrimination because it prevented her from receiving financial assistance and donations to fulfill Purple Vine's mission. (*Id.*)

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### 3. Discussion

As an initial matter, the Court construes Marius's failure to respond to the Bank's motion as a lack of opposition. *See* Local Rule 7.1(c)(1) ("Failure to [timely respond to a motion] may be deemed sufficient cause for granting the motion by default.") Additionally, however, the Court has also reviewed the substance of the Bank's motion and finds it due to be granted on its merits, as well.

First, Marius's second count alleges racial discrimination under Part I of the Florida Civil Rights Act. Under that Act, race-based discrimination is prohibited within "any place of public accommodation." Fla. Stat. § 760.08. "Public accommodations," in turn, are defined as "places of public accommodation, lodgings, facilities principally engaged in selling food for consumption on the premises, gasoline stations, places of exhibition or entertainment, and other covered establishments." Fla. Stat. § 760.02(11). The Act then enumerates establishments which fit the definition:

> (a) Any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than four rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his or her residence.
>
> (b) Any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment, or any gasoline station.

> (c) Any motion picture theater, theater, concert hall, sports arena, stadium, or other place of exhibition or entertainment.
>
> (d) Any establishment which is physically located within the premises of any establishment otherwise covered by this subsection, or within the premises of which is physically located any such covered establishment, and which holds itself out as serving patrons of such covered establishment.

Fla. Stat. § 760.02(11)(a)–(d). The Bank posits that the Act's definition of "public accommodations" does not include a bank. In support, it points to the cannon of construction *expressio unius est exclusio alterius*, under which the Florida Supreme Court "has reasoned that the Legislature purposefully excluded items not included in a list." *Okposio v. Barry U. (Main Campus)*, 252 So. 3d 1290, 1291 (Fla. 1st DCA 2018) (quoting *Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294, 304 (Fla. 2017)). Because the Act does not include a bank within the enumerated list of places of public accommodations, the Bank reasons a bank does not fit the Act's definition. And, without any counterargument, the Court is hard-pressed disagree—especially where a bank has very little, if anything, in common with any of the numerous types of places and facilities included in the Act's comprehensive list. Indeed, as the Court noted in its prior order (ECF No. 32, 4), such a finding is consistent with similar analyses evaluating the definition of a place of public accommodation under the analogous Title II of the federal Civil Rights Act. *See Hatcher v. Servis First Bank*, No. 2:16-CV-01362-RDP, 2016 WL 7336403, at *3 (N.D. Ala. Dec. 19, 2016) (cleaned up) ("Title II only prohibits discrimination on the basis of race or color in 'places of public accommodation,' and banks are not included in Title II's comprehensive list of public accommodations."); *see also Akyar v. TD Bank US Holding Co.*, No. 18-CV-379 (VSB), 2018 WL 4356734, at *5 (S.D.N.Y. Sept. 12, 2018) ("[T]he text of § 2000a does not explicitly include banks and courts have expressly concluded that banks are not places of public accommodation within the meaning of the provision.") (citing 42 U.S.C. § 2000a(b)); *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 429 (4th Cir. 2006) ("Congress has clearly delineated those entities that fall within Title II's ambit, and [courts] are not at liberty to go beyond what it has plainly enacted."). Accordingly, because there is no showing that a bank qualifies as a place of public accommodation, under the Act, the Court dismisses count two from Marius's complaint.

Next, the Bank argues that Marius has failed to allege facts satisfying the elements for a claim of intentional infliction of emotional distress under Florida law. The Court agrees.

"Under Florida law, to state a claim for intentional infliction of emotional distress, the plaintiff must allege: "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." *Holston v. Dawson*, No. 22-11198, 2023 WL 7485227, at *7 (11th Cir. Nov. 13, 2023) (cleaned up). Under Florida law, as to the second element, "the standard for outrageous conduct is particularly high." *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1368 (11th Cir. 2024) (cleaned up).

Here, Marius relies on Rodriguez's conduct to support the outrageous-conduct element of her intentional-infliction-of-emotional-distress claim. To that end, Marius's factual allegations include Rodriguez's speaking to her "in a loud voice"; "telling [Marius] that the City of Aventura would never allow a homeless shelter to be opened in the city"; encouraging Marius to seek out a bank "for [B]lack people"; initially refusing to return Marius's documents to her; and ripping up some of Marius's documents. (2nd Am. Compl. ¶¶ 11, 12, 19, 20.) The Bank argues that these allegations are insufficient to support a claim for intentional infliction of emotional distress. (Def.'s Mot. at 11.) The Court concurs.

As the Bank points out, "Florida courts have been reluctant to find claims for intentional infliction of emotional distress based solely on allegations of verbal abuse." (*Id.* (quoting *Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012).) Indeed, Florida courts have rejected intentional-infliction-of-emotional-distress claims involving allegations describing far worse conduct than that described by Marius. *See Lopez*, 676 F.3d at 1236 (citing cases, for example, where a plaintiff alleged his supervisors called him "racially derogatory terms" and imposed various workplace related indignities upon him, *Williams v. Worldwide Flight Servs. Inc.*, 877 So.2d 869 (Fla. 3d DCA 2004); and where a court described "vicious verbal attacks that included the use of humiliating language and racial epithets," *Lay v. Roux Labs., Inc.*, 379 So.2d 451, 452 (Fla. 1st DCA 1980)). So, even though the behavior Marius describes could be construed as "extremely reprehensible, racially hostile misconduct," it nonetheless fails to satisfy Florida's outrageousness requirement. *Lopez*, 676 F.3d at 1236; *Wilcox v. La Pensee Condo. Assn., Inc.*, No. 21-81565-CV, 2022 WL 2205412, at *3 (S.D. Fla. June 17, 2022) (Middlebrooks, J.) ("Only in the most extreme circumstances can words alone, even incredibly offensive ones, be sufficiently outrageous."). Accordingly, and without any counterargument from Marius, the Court dismisses count three.

### 4. Conclusion

In sum, the Court **grants** the Bank's motion (**ECF No. 39**) and dismisses counts two and three from Marius's complaint. The Bank must file its answer, then, as to count one, under 42 U.S.C. § 1981, on or before **February 24, 2025**.

**Done and ordered**, in Miami, Florida, on February 14, 2025.

_____
Robert N. Scola, Jr.
United States District Judge